IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

PAMELA WARDEN, )
)
        Plaintiff, )
) CIVIL ACTION NO.: 1:21-cv-632
v. )
)
HARTFORD LIFE AND ACCIDENT )
INSURANCE COMPANY[1], )
)
        Defendant. )
_____

## **COMPLAINT**

The Plaintiff, Pamela Warden, does hereby state the following:

### **Action**

1. This is an action for declaratory, compensatory, and injunctive relief based on the Plaintiff's rights to long term disability income benefits arising under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et. seq. (hereinafter "ERISA"), and more particularly 29 U.S.C. § 1132(a)(1)(B). The jurisdiction of this Court is invoked pursuant to 29 U.S.C. § 1132(e).

### **Parties**

2. The Plaintiff, Pamela Warden, is a resident of Yadkin County, North

---

[1] The North Carolina Department of Insurance through the National Association of Insurance Commissioners lists the Defendant company name as Hartford Life & Accident Insurance Company. However, the name is listed as Hartford Life and Accident Insurance Company on the Certificate of Insurance of the policy identified herein, as well as on the signature page of the policy which was provided by the Defendant insurance company.

1

Carolina. At the onset of the Plaintiff's disability, Plaintiff was an "employee" of Novant Health, Inc. (hereinafter "Novant"), within the meaning of 29 U.S.C. § 1002(6).

3. The Defendant, Hartford Life and Accident Insurance Company (hereinafter referred to as the "Hartford" and also known as "Hartford Life & Accident Insurance Company (see fn1)), is a corporation or company licensed to transact business in North Carolina. Upon information and belief, the Hartford is generally engaged in the insurance business. As more specifically described below, at all times pertinent to this action, the Hartford insured the Plan which provided long term disability income coverage to the Plaintiff as well as other employees of Novant. Upon information and belief, the Hartford had discretionary authority to administer claims brought under the Plan and was assisted in this process by its agents, affiliates, or subsidiaries including, but not limited to, Benefit Management Services. Accordingly, the Hartford is a "fiduciary" of the Plan within the meaning and definition of 29 U.S.C. § 1002(21).

## The Plan

4. Defendant Hartford entered into an agreement with Novant, to provide group long term disability income coverage to its employees. This agreement was formalized in a policy that was issued to Novant, under Group Insurance Policy No. GLT-043019. The policy and Plan constitute an "employee welfare benefit plan," as defined by 29 U.S.C. § 1002(1).

5. The Plan, as contained in the written policy identified above, provides that any employee who is disabled due to sickness or injury is, after an "elimination period", entitled to a percentage of his or her basic monthly earnings each month during the period of disability for the "maximum duration of benefits".

6. During her employment with Novant, the Plaintiff participated in the Plan and was, at the time her disability began, a fully vested member of the Plan. Accordingly, Plaintiff was a "participant" of the Plan within the meaning and definition of 29 U.S.C. § 1002(7).

**Facts**

7. The Plaintiff is presently 53 years of age.

8. The Plaintiff started working for Novant on or about March 5, 2001, and worked there continuously and was working as a registered nurse when she was forced to stop working on or about January 24, 2018, because of pain and limitations associated with rheumatoid arthritis, osteoarthritis, and fibromyalgia.

9. The Plaintiff applied for and was awarded long term disability benefits through the Defendant with a start date on or about April 26, 2018.

10. In December 2018, the Social Security Administration issued a decision finding the Plaintiff disabled on January 24, 2018.

11. On August 27, 2020, the Plaintiff underwent an independent medical examination at the request of the Defendant. The examination was performed by Dr.

3

Joseph Guarino. In conclusion, Dr. Guarino opined, among other things, that the Plaintiff is able to stand up to 0.25 hours at a time and up to 1 hour per day; walk up to 0.5 hours at a time and up to 1 hour per day; and lift up to 10 pounds on an occasional basis and to carry up to 5 pounds on an occasional basis.

12. In an "Employability Analysis" dated October 1, 2020, Andrea Brown who is a vocational specialist for the Defendant opined that the Plaintiff could work as a Referral Clerk and Credit Authorizer based on certain functional abilities. According to the report, Ms. Brown assumed that the Plaintiff would be able to "change positions at will."

13. In a letter dated October 2, 2020, the Defendant notified the Plaintiff that her long term disability benefits were being terminated on April 26, 2020, because the Plaintiff was no longer disabled. According to the Defendant, the Plaintiff retained the ability to perform sedentary exertion so she could work as a Referral Clerk or Credit Authorizer.

14. In a letter dated March 15, 2021, the Plaintiff appealed the Defendant's decision to terminate her long term disability benefits and she requested additional time to submit documentation in support of her appeal.

15. In two submissions, the Plaintiff submitted the following evidence supporting her claim for long term disability benefits:

- Medical source statement dated April 15, 2021, from the Plaintiff's treating rheumatologist, Dr. Julio Bravo, in which he opined, among

4

- other things, that the Plaintiff has been diagnosed with active moderate stage 2 rheumatoid arthritis; that it was reasonable for the Plaintiff to report pain, stiffness, and swelling in her hands, fingers, and wrists; and that the Plaintiff could not perform bilateral handling and fingering for 2-6 hours in a work environment.

- Medical source statement dated April 15, 2021, from the Plaintiff's treating primary care physician, Dr. Terry D. Hess, in which he opined, among other things, that the Plaintiff has been diagnosed with active moderate stage 2 rheumatoid arthritis; that it was reasonable for the Plaintiff to report pain, stiffness, and swelling in her hands, fingers, and wrists; and that the Plaintiff could not perform bilateral handling and fingering for 2-6 hours in a work environment.

- Vocational opinion dated April 28, 2021, from certified rehabilitation counselor, Michael A. Fryar. Mr. Fryar opined, among other things, that the Plaintiff would not be able to perform the occupations identified by the Defendant or any other occupations in the national economy in light of the medical opinions offered by Drs. Bravo, Hess, and Guarino. Mr. Fryar further opined that the Plaintiff would not be able to change position or posture at will in the occupations identified by the Defendant as this would be a "modification or accommodation to the standard essential duties typically required by an employer."

- Medical records from orthopedist Dr. Derek T. Bernstein, Novant

Cardiology, Novant Lewisville Family Practice, and Novant Rheumatology and Arthritis.

16. In a letter dated May 25, 2021, the Defendant notified the Plaintiff that it had retained Dr. Rajendra Marwah to review her medical records. According to Dr. Marwah's report dated May 20, 2021, the Plaintiff "should be able to work the full 40 hours a week, 8 hours a day and no restrictions or limitations are warranted as of 4/26/20 to the present." Dr. Marwah indicated in his report that he called Dr. Bravo on May 7, 2021, and May 10, 2021, but was not able to speak with him on either occasion.

17. In response to Dr. Marwah's report, on or about June 15, 2021, the Plaintiff submitted updated medical records from Dr. Bravo dated June 9, 2021, as well as supplemental documentation including, but not limited to, internet articles on fibromyalgia, rheumatoid arthritis, and court cases in which Dr. Marwah provided medical opinions for insurance companies.

18. In response to Dr. Marwah's report, on or about June 16, 2021, the Plaintiff submitted a medical source statement from Dr. Bravo. According to Dr. Bravo, he spoke to Dr. Marwah but ended the communication. Dr. Bravo further opined, among other things, that the Plaintiff suffers from seronegative rheumatoid arthritis; that he disagreed with Dr. Marwah that the Plaintiff does not have any limitations in the use of her hands; that the Plaintiff could not perform bilateral handling and fingering for 2-6 hours a day in a work environment; that the Plaintiff suffers from fibromyalgia; and that she could not

6

work on a "regular and continuous" basis.

19. In a letter dated July 6, 2021, the Defendant provided the Plaintiff with Dr. Marwah's addendum to his report dated June 30, 2021. In the addendum, Dr. Marwah again opined that the Plaintiff "should be able to work the full 40 hours a week, 8 hours a day and no restrictions or limitations are warranted."

20. On or about July 14, 2021, the Plaintiff notified the Defendant that she did not have any additional evidence to submit in response to Dr. Marwah's opinions because they had not changed. Specifically, the Plaintiff noted that Dr. Marwah's opinions were "contrary to the objective medical evidence, treating physician opinions, and findings from the Social Security Administration."

21. In a letter dated July 23, 2021, the Defendant notified the Plaintiff that it had denied the Plaintiff's appeal because she retained the ability to work as a Referral Clerk and Credit Authorizer. The Defendant indicated that the Plaintiff had exhausted all administrative appeal procedures.

22. The Plaintiff has exhausted all administrative review procedures provided by the Plan.

## Claims for Relief

23. Plaintiff hereby incorporates the foregoing paragraphs as if they were fully set forth herein.

24. As stated above, the medical and other evidence shows that the Plaintiff has

been totally disabled from any occupation since April 26, 2020. Accordingly, the Plaintiff is entitled to long term disability income benefits through the maximum duration of the Plan.

25. The Defendant's decisions to terminate the Plaintiff's benefits and to deny her appeal were not reasonable.

26. The Defendant's denial of long term disability benefits to the Plaintiff is a breach of the Plan and the terms of ERISA pursuant to 29 U.S.C. § 1001 et. seq.

27. As a direct and proximate result of the Defendant's breach of the Plan and violation of ERISA, Plaintiff has sustained losses, including the loss of benefits for her long term disability for which she is entitled to reimbursement.

28. Based on the Defendant's decision to terminate the Plaintiff's benefits and to deny her appeal, the Plaintiff is entitled to declaratory and injunctive relief establishing her entitlement to future disability benefits and requiring the Defendant to make such payments on a monthly basis through the maximum benefit period of the Plan.

29. The Plaintiff is entitled to recover her attorney's fees for her representation herein pursuant to 29 U.S.C. § 1132(g).

## Prayer for Relief

WHEREFORE, Plaintiff requests the following relief:

(1) That this Court issue a declaratory judgment that Plaintiff is entitled to long term disability income benefits under the Plan through the maximum benefit period as

defined by the Plan;

(2) That Plaintiff recover from the Defendant all benefits to which she is entitled under the Plan;

(3) That Plaintiff recover pre-judgment and post-judgment interest on all amounts recovered herein;

(4) That Plaintiff recover the costs of this action, including reasonable attorney's fees pursuant to 29 U.S.C. § 1132(g); and

(5) That this Court award such other and further relief as it deems just and proper.

This the 12th day of August 2021.

**/s/ John K. Koontz**
John K. Koontz
NC State Bar No.: 22156
Attorney for Plaintiff
Daggett Shuler, Attorneys at Law
2140 Country Club Road
Winston-Salem, NC 27104
Telephone No. (336) 724-1234
E-mail: jkoontz@daggettshulerlaw.com